**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| MARGRET BRACE, PAT MERKOVICH, DOLORES MARTINEZ and JENNIFER GUERRIDO, Individually and on Behalf of All Others Similarly Situated, | ) Case No.: 18-cv-76 <br> ) <br> ) **CLASS ACTION COMPLAINT** <br> ) <br> ) |
| Plaintiffs, | ) <br> ) **Jury Trial Demanded** |
| vs. | ) <br> ) |
| MIDLAND CREDIT MANAGEMENT, INC., MIDLAND FUNDING, LLC, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Margret Brace is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff Pat Merkovich is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5.      Plaintiff Dolores Martinez is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6.      Plaintiff Jennifer Guerrido is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

7.     Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

8.     Defendant Midland Credit Management, Inc. ("MCM") is a foreign corporation with its principal place of business located at 3111 Camino Del Rio North, Suite 103, San Diego, CA 92108.

9.     MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10.     MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Midland is a debt collector as defined in 15 U.S.C. § 1692a.

11.     Defendant Midland Funding, LLC ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

12.     Midland Funding is engaged in the business of collecting debts, both owed to others and acquired after default, and incurred for personal, family or household purposes.

13.     The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

14.     The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of

2

which is the collection of any debts, *or* who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added); *see Barbato v. Greystone All., LLC*, Civil Action No. 3:13-2748, 2017 U.S. Dist. LEXIS 172984 (M.D. Pa. Oct. 19, 2017); *Tepper v. Amos Fin., LLC*, No. 15-cv-5834, 2017 U.S. Dist. LEXIS 127697 *20-22 (E.D. Pa. Aug. 9, 2017) ("the statute provides two possible paths for a plaintiff to prove that a particular defendant is a 'debt collector.' Subject to certain exceptions not relevant here, the defendant will be a debt collector if either (1) its 'principal purpose . . . is the collection of any debts,' or (2) it 'regularly collects or attempts to collect . . . debts owed or due . . . another.'").

15. The primary purpose of Midland Funding's business, and Midland Funding's principal purpose, is the collection of consumer debts.

16. Midland Funding's website contains an "FAQ" webpage, which states:

### Who is Midland Funding?

Midland Funding LLC is one of the nation's largest buyers of unpaid debt. For example, we may buy an unpaid credit card account. This happens when a company decides to sell the unpaid account rather than continue collection efforts. Midland Funding LLC purchases accounts with an unpaid balance when:

- An account has gone at least 180 days without making a payment, or
- Someone paid less than the minimum monthly payment for at least 180 days, and
- The original creditor wishes to sell the right to collect on the account balance.

https://www.midlandfunding.com/faqs/.

17. Together, MCM and Midland Funding are part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars. The 2013 10-K filing for MCM and Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

3

18. According to Encore's 2013 Form 10-K, Encore *spent* more than $525 million to purchase consumer credit card accounts in the U.S. As Midland paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars. Encore purchased similar amounts of U.S. consumer credit card accounts in 2012 and 2011.

19. Midland Funding's role, generally is to purchase and receive assignment of consumer debts that are in default at the time Midland Funding acquires them. Directly and indirectly through its affiliates, including Encore and MCM, Midland Funding uses instrumentalities of interstate commerce, including the mail, telephone, banking systems and wire transfers in its business of aggregating and collecting debts, primarily charged off consumer credit card debts. The primary purpose of debt buyers like Midland Funding is debt collection. *See, eg. Mitchell v. LVNV Funding, LLC*, No. 2:12-CV-523-TLS, 2017 U.S. Dist. LEXIS 206440 *16 (N.D. Ind. Dec. 15, 2017) ("'[t]here is no business purpose in purchasing charged off debts if the ultimate goal is not to collect them,' and … '[d]ebt buyers don't buy debts to use them as wallpaper, but to turn them into money'" (quoting Pl.'s Reply Br.)).

20. Midland Funding by itself and through its attorneys, also files thousands of collection lawsuits against consumers in state courts annually. Wisconsin Circuit Court Access (CCAP), for example, shows that Midland Funding filed 604 small claims lawsuits against Wisconsin consumers in the month of November 2017 alone. When Midland Funding obtains judgment in such actions, usually by default, it frequently seeks to garnish consumers' wages by contacting the consumers' employers.

21. Midland Funding is a debt collector as defined in 15 U.S.C. § 1692a. *Barbato*, 2017 U.S. Dist. LEXIS 172984; *Tepper v. Amos Fin., LLC*, 2017 U.S. Dist. LEXIS 127697 *20-22.

22.     A company meeting the definition of a "debt collector" under the FDCPA (here, Midland Funding) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

### *Brace Letter*

23.     Plaintiff Brace had a Comenity Bank credit card, which she used only for personal, family or household purposes, namely, purchases of household goods and services.

24.     Prior to February 24, 2017, Brace's Comenity Bank credit card account went into default.

25.     Prior to February 24, 2017, and after the Comenity Bank credit card account was in default, Comenity Bank sold or otherwise assigned the ownership rights to the account to Midland Funding.

26.     On or about February 24, 2017, MCM mailed a debt collection letter to Brace regarding the Comenity Bank credit card account. A copy of this letter is attached to this Complaint as Exhibit A.

27.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Brace inserted by computer.

28.     Upon information and belief, Exhibit A is a form debt collection letter used by MCM to attempt to collect alleged debts.

29.     Exhibit A was the first letter MCM sent to Brace regarding this alleged debt.

30.     Exhibit A contains the following text:

5

Call (800) 939-2353 by
04-10-2017 to
Discuss Options

31.    Exhibit A also states:

**LET US HELP YOU!** If the account goes to an attorney, our flexible options may no longer be available to you. There still is an opportunity to make arrangements with us. **We encourage you to call us: (800) 939-2353.**

32.    The text in MCM's letter to Plaintiff is inconsistent with 15 U.S.C. §§

1692g(a)(4), which states:

> (a) **Notice of debt; contents**
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector;

 (emphasis added).

33.    The language reproduced in paragraphs 20-21, above, overshadows the FDCPA

debt validation notice.

34.    Exhibit A fails to clearly and unambiguously inform the unsophisticated

consumer that, in order to invoke his or her right to require MCM to cease most collection

activities until they provide verification of the debt, the consumer must make the request in

writing. 15 U.S.C. § 1692g(a)(4). Instead, it tells the consumer to call MCM.

35.    The practical effect of the demand to call MCM is to discourage consumers from

disputing debts in writing.

6

36.     An oral dispute does not trigger the FDCPA verification requirements, which includes a temporary suspension of collection efforts until verification is provided. 15 U.S.C. § 1692g(b).

37.     MCM did not effectively convey to the consumers their rights under the FDCPA. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 743 (N.D. Ill. 2003); *see also Desantis v. Computer Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001) (a "debt collector violates the Act if it fails to convey the information required by the Act.").

38.     The consumer is not required to rely upon the debt collector to voluntarily comply with the FDCPA. *McCabe*, 272 F. Supp. 2d at 738 ("However, Crawford misses the point of the protection found in § 1692g(a)(4). Although a debt collector *may* provide verification upon *oral* notification, the debt collector *must* provide verification upon *written* notification.  If the debtor gives only *oral* notification of the dispute, the FDCPA imposes no requirement on the debt collector to obtain verification of the debt.").

39.     Failure to provide the correct validation notice within five days of the initial communication with Plaintiff and the class is a *per se* violation of the FDCPA. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 2016 U.S. App. LEXIS 6361 *15-16 (7th Cir. Apr. 7, 2016) ("we have not extended the implicit materiality requirement of § 1692e to reach claims under § 1692g(a).).

40.     For purposes of Plaintiff's claim under 15 U.S.C. §§ 1692e and 1692e(10), Defendants' omission is a material violation of the FDCPA. A consumer who attempts to orally exercise verification rights or a request for the identity of the original creditor does not effectively invoke his or her rights under 15 U.S.C. § 1692g(b):

(b) **Disputed debts**

7

> If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector *in writing* that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

(emphasis added).

41.     MCM's statement that the consumer should call MCM overshadows the validation notice. 16 U.S.C. § 1692g.

### *Merkovich Letter*

42.     Plaintiff Merkovich had a Comenity Bank credit card, which she used only for personal, family or household purposes, namely, purchases of household goods and services.

43.     Prior to March 31, 2017, Merkovich's Comenity Bank credit card account went into default.

44.     Prior to March 31, 2017, and after the Comenity Bank credit card account was in default, Comenity Bank sold or otherwise assigned the ownership rights to the account to Midland Funding.

45.     On or about March 31, 2017, MCM mailed a debt collection letter to Merkovich regarding an alleged debt, allegedly owed to "Comenity Capital Bank." ("Comenity"). A copy of this letter is attached to this complaint as Exhibit B.

8

46. Upon information and belief, the alleged debt that MCM was attempting to collect was a credit card account, used only for personal, family or household purposes.

47. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Merkovich inserted by computer.

48. Upon information and belief, Exhibit B is a form debt collection letter used by MCM to attempt to collect alleged debts.

49. Upon information and belief, Exhibit B is the first written communication that MCM sent to Merkovich regarding the alleged debt to which Exhibit B refers.

50. Exhibit B contains the following text:

Unless you notify MCM within thirty (30) days after receiving this notice that you dispute the validity of the debt, or any portion thereof, MCM will assume this debt to be valid. If you notify MCM, in writing, within thirty (30) days after receiving this notice that the debt, or any portion thereof, is disputed, MCM will obtain verification of the debt or a copy of a judgment (if there is a judgment) and MCM will mail you a copy of such verification or judgment. If you request, in writing, within thirty (30) days after receiving this notice, MCM will provide you with the name and address of the original creditor.

51. The above language in Exhibit B is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

52. Exhibit B also contains the following settlement offer:

**To welcome you to MCM, we'd like to offer you up to 10% savings by making a single payment of $170.68 by 05-15-2017.**

53. Exhibit B is confusing to the unsophisticated consumer because it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains

9

the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

54.     The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit B.

55.     The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

56.     Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. He may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

57.     Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

58.     The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

10

59.    The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in Exhibit B. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

60.    The effect of the settlement offer and threat of reporting in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

61.    Defendant did not include explanatory language in Exhibit B, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

62.    In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt as well as temporarily suspend reporting to the three credit bureaus.

### *Martinez Letter*

63.    Plaintiff Martinez had a Comenity Bank credit card, which she used only for personal, family or household purposes, namely, purchases of household goods and services.

64.    Prior to April 26, 2017, Martinez's Comenity Bank credit card account went into default.

65.    Prior to April 26, 2017, and after the Comenity Bank credit card account was in default, Comenity Bank sold or otherwise assigned the ownership rights to the account to Midland Funding.

66.     On or about April 26, 2017, MCM mailed a debt collection letter to Martinez regarding an alleged debt, allegedly owed to "Comenity Bank." ("Comenity").  A copy of this letter is attached to this complaint as <u>Exhibit C</u>.

67.     Upon information and belief, the alleged debt that MCM was attempting to collect was a credit card account, used only for personal, family or household purposes.

68.     Upon information and belief, <u>Exhibit C</u> is a form letter, generated by computer, and with the information specific to Martinez inserted by computer.

69.     Upon information and belief, <u>Exhibit C</u> is a form debt collection letter used by MCM to attempt to collect alleged debts.

70.     Upon information and belief, <u>Exhibit C</u> is the first written communication that MCM sent to Martinez regarding the alleged debt to which <u>Exhibit C</u> refers.

71.     <u>Exhibit C</u> contains the following text:

Welcome! On 03-31-2017, your Comenity Bank/Boston Store account was sold to Midland Funding LLC, which is now the sole owner of this debt.  Midland Credit Management, Inc. ("MCM"), a debt collection company, will be collecting on, and servicing your account, on behalf of Midland Funding LLC.

72.     <u>Exhibit C</u> represents that Midland Funding acquired Martinez's account on March 31, 2017.

73.     MCM's representation of the sale date is inconsistent with Comenity's representation that it had sold the debt to Midland Funding on or before March 28, 2017. A copy of Comenity's letter referencing the sale is attached as <u>Exhibit D</u>.

74.     The misrepresentation of the date of assignment of a debt is a material misrepresentation. The unsophisticated consumer could mistakenly make payments to the wrong entity.

75.     It is not clear from <u>Exhibits C and D</u> to whom the consumer should pay. Payment to the wrong party may not satisfy the alleged debt owed to the correct creditor, who would be within its rights to continue collection efforts or even file a lawsuit to collect the debt.

76.     In addition, the consumer may be barred from recovering a payment to the incorrect party by the voluntary payment doctrine. Even if the voluntary payment doctrine does not apply or would not be enforced, the logistical challenge of obtaining a refund would discourage consumers from attempting to recover their erroneous payment.

77.     The unsophisticated consumer would be confused as to the legal status of the debt.

### *Guerrido Letters*

78.     Plaintiff Guerrido had a Citibank credit card, which she used only for personal, family or household purposes, namely, purchases of household goods and services. The last four digits of the Citibank account were "4056."

79.     Prior to January 26, 2017, Guerrido's Citibank credit card account went into default.

80.     Prior to January 26, 2017, and after the Citibank credit card account was in default, Citibank sold or otherwise assigned the ownership rights to the account to Midland Funding.

81.     On or about January 26, 2017, MCM mailed a debt collection letter to Guerrido regarding the account formerly owed to Citibank. A copy of this letter is attached to this complaint as <u>Exhibit E</u>.

82.     Upon information and belief, the alleged debt that MCM was attempting to collect was a credit card account, used only for personal, family or household purposes.

13

83.     Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Guerrido inserted by computer.

84.     Upon information and belief, Exhibit E is a form debt collection letter used by MCM to attempt to collect alleged debts.

85.     Upon information and belief, Exhibit E is the first written communication that MCM sent to Guerrido regarding the alleged debt to which Exhibit E refers, i.e. the former Citibank account ending in 4056.

86.     Exhibit E represents the balance of the debt to be $958.45.

87.     Exhibit E contains the following text:

### Benefits of Paying Your Debt

**– Save $95.84 if you pay by 02-25-2017 –**
**– Put this debt behind you –**
**– No more communication on this account –**
**– Peace of mind –**

88.     On or about May 31, 2017, MCM mailed another debt collection letter to Guerrido. A copy of this letter is attached to this complaint as Exhibit F.

89.     Exhibit F sought to collect the same regarding an alleged debt – the former Citibank account ending in 4056.

90.     Upon information and belief, Exhibit F is a form letter, generated by computer, and with the information specific to Guerrido inserted by computer.

91.     Upon information and belief, Exhibit F is a form debt collection letter used by MCM to attempt to collect alleged debts.

92.     Exhibit F represents the balance of the debt to be $958.45.

93.     Exhibit F contains the following text:

14

**Benefits of Paying Your Debt**
– Save $95.85 if you pay by 06-30-2017 –
– Put this debt behind you –
– No more communication on this account –
– Peace of mind –

94.     <u>Exhibits E and F</u> are confusing to the unsophisticated consumer.

95.     The unsophisticated consumer would not understand why the "save" amount in <u>Exhibits E and F</u> would be different. The "save" amount is represented to be a percentage of the balance, and the balance is the same on both letters.

96.     It is unclear what amount MCM is actually asking the consumer to pay.

97.     Plaintiffs were confused by <u>Exhibits A-F</u>.

98.     The unsophisticated consumer would be confused by <u>Exhibits A-F</u>.

99.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such

15

practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

100. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

16

101. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

102. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

## COUNT I – FDCPA

103. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. Count I is brought on behalf of Plaintiff Brace.

105. Exhibit A fails to inform the consumer that, in order to invoke his or her right to obtain verification of the debt, the consumer must make the request in writing. 15 U.S.C. § 1692g(a)(4).

106. Defendants violated 15 U.S.C. §§ 1692g, 1692g(a), 1692g(b) and 1692e(10).

## COUNT II – FDCPA

107. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

108. Count II is brought on behalf of Plaintiff Merkovich.

109. The settlement offer in Exhibit B conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

110. Exhibit B is confusing, deceptive, and/or misleading to the unsophisticated consumer.

111. 15 U.S.C. § 1692g(b) states, in part:

17

(b) **Disputed debts**

…

Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

112.    15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

113.    15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

114.    Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

## COUNT III – FDCPA

115.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

116.    Count III is brought on behalf of Plaintiff Martinez.

117.    The inconsistent dates of assignment are confusing to the unsophisticated consumer, who would not know the identity of the account's owner on and between the dates in question.

118.    Defendants misrepresented the legal status of the debt.

119.    Defendants violated 15 U.S.C. §§ 1692e(2)(a).

## COUNT IV – FDCPA

120.    Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

121.    Count IV is brought on behalf of Plaintiff Guerrido.

18

122.   Exhibits E and F misrepresent the amount the consumer would "save" by MCM's settlement offer. The letters state two different amounts, despite the balances being equal and MCM not adding interest to the account.

123.   Defendants misrepresented the amount of the debt.

124.   Defendants violated 15 U.S.C. §§ 1692e(2)(a).

## CLASS ALLEGATIONS

125.   Plaintiffs bring this action on behalf of four classes.

126.   Class One consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) between January 16, 2017 and January 16, 2018, inclusive, (e) that was not returned by the postal service. Plaintiff Brace is the designated representative of Class One.

127.   Class Two consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit B to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes (d) between January 16, 2017 and January 16, 2018, inclusive, (e) that was not returned by the postal service. Plaintiff Brace is the designated representative of Class Two.

128.   Class Three consists of (a) all natural persons in the State of Wisconsin, (b) who were sent an initial collection letter in the form represented by Exhibit C to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) which letter stated that the creditor had sold the consumer's account to Midland Funding on a date after the actual assignment, (e) between January 16, 2017 and January 16, 2018, inclusive,

19

(f) that was not returned by the postal service. Plaintiff Martinez is the designated representative of Class Three.

129.    Class Four consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit E to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family or household purposes, (d) and who were sent another collection letter in the form represented by Exhibit F to the complaint in this action, (e) and where the "Save" amount is different between the letters, despite the balance remaining the same, (f) between January 16, 2017 and January 16, 2018, inclusive, (g) that was not returned by the postal service. Plaintiff Guerrido is the designated representative of Class Four.

130.    Each Class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each Class.

131.    There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A-B violate the FDCPA.

132.    Plaintiffs' claims are typical of the claims of the Class members.  All are based on the same factual and legal theories.

133.    Plaintiffs will fairly and adequately represent the interests of the Class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

134.    A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

135.    Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendants for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  January 16, 2018

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

21